IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY BITTERMAN, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MOBILE FIDELITY SOUND LAB, INC. and AUDIOPHILE MUSIC DIRECT, INC., <br><br> Defendants. | Case No. 1:22-cv-04714 <br><br> **Hon. Sara L. Ellis** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MOBILE FIDELITY SOUND LAB, INC. AND AUDIOPHILE MUSIC
DIRECT, INC.'S MOTION TO STAY ACTION IN FAVOR OF FIRST-FILED CASE**

## INTRODUCTION

Defendants, Audiophile Music Direct, Inc. ("Music Direct"), and Mobile Fidelity Sound Lab, Inc. ("MoFi"), move for an order staying this case pending judicial approval of a nationwide class action settlement reached in a substantially-identical and first-filed class action in the District Court for the Western District of Washington entitled: *Tuttle, et al. v. Audiophile Music Direct, Inc., et al.*, Case No. 2:22-cv-01081-JLR ("*Tuttle*").

A stay of this case is warranted under the well-established first-to-file rule because it is duplicative of *Tuttle*, which involves substantially similar parties, allegations, and requests for relief. Alternatively, a stay is warranted under this Court's inherent power because it will not prejudice any party but, rather, will streamline the issues before this Court and prevent duplicative litigation. Indeed, because the proposed nationwide settlement in *Tuttle* (the "Nationwide Settlement") will resolve the class claims before this Court, staying this case will conserve judicial and party resources and avoid piecemeal litigation.

Because a stay of this case is in the interest of wise judicial administration, Music Direct and MoFi respectfully request that this Court stay this action pending final approval of the Nationwide Settlement.

## BACKGROUND

### A. Plaintiff's Complaint

The gravamen of Plaintiff's Complaint is that Defendants engaged in false and misleading practices in connection with their marketing and sale of vinyl records. Bitterman Compl., Dkt. 1, ¶¶ 2-3. Plaintiff alleges that Defendants falsely marketed certain records as being "genuine analog recordings while falsely omitting the existence of a digital step in Defendants' proprietary mastering chain." *Id*. at ¶ 2. Plaintiff further alleges that these purported

misrepresentations were contained on the album covers for certain records, in promotional materials included in the records' product packaging, on MoFi's website, and also expressly made by MoFi's representatives. *Id.* at ¶¶ 43-50, 62.

On behalf of a nationwide class and New York state sub-class, Plaintiff brings claims for violations of 15 U.S.C. § 2301, *et seq.*, (the "Magnuson-Moss Warranty Act"), breach of express and implied warranty under Illinois law, common law fraud, and unjust enrichment. Plaintiff also brings claims for violations of New York's consumer protection and false advertising statutes, N.Y. Gen. Bus. Law §§ 349, 350, on behalf of the New York state sub-class.

Plaintiff's putative nationwide class is defined as "[a]ll persons nationwide who purchased the UD1S Products in the United States during the applicable statute of limitations." *Id.* at ¶ 81. The UD1S Products are defined as "Defendants' vinyl records sold as Limited Edition Ultradisc One-Step Recordings." *Id.* at ¶ 1.

**B. Substantially Similar Nationwide Class Actions Pending in Other District Courts**

This case was filed in the United States District Court for the Northern District of Illinois on September 1, 2022. *See* Bitterman Compl., Dkt. No. 1; Declaration of Christine E. Skoczylas ("Skoczylas Decl."), ¶ 3; *id.* at Ex. 3. But both prior to, and after, this case was filed, four (4) separate nationwide class actions were filed in other federal district courts, each involving the same basic facts and issues alleged here. The four related proposed class actions are listed below:

| **State** | **Case** | **Date Filed** |
|---|---|---|
| WA | *Tuttle, et al. v. Audiophile Music Direct, Inc., et al.*, Case No. 2:22-cv-01081-JLR (W.D. Wash.) | August 2, 2022 |
| IL | *Stiles v. Mobile Fidelity Sound Lab, Inc.*, Case No. 1:22-cv-04405 (N.D. Ill) | August 18, 2022 |
| CA | *Mark Allen v. Audiophile Music Direct, Inc.. et al.*, | September 22, 2022 |

3

|    | Case No. 2:22-cv-8146-GW-MRWx (C.D. Cal.) |    |
|----|-------------------------------------------|----|
| CA | *Molinari v. Audiophile Music Direct, Inc., et al.*, Case No. 4:22-cv-05444 (N.D. Cal.) | September 23, 2022 |

Of these cases, *Tuttle* is the first-filed action encompassing the same proposed nationwide class that Plaintiff purports to represent, as well as the same allegations against Defendants.

### C. The First-Filed *Tuttle* Action

This case is materially identical to *Tuttle*, which was filed in the District Court for the Western District of Washington on August 2, 2022—nearly a month earlier than this case. Skoczylas Decl. ¶ 2; *id.* at Ex. 1. In their operative First Amended Complaint ("Tuttle FAC"), the *Tuttle* plaintiffs also allege that Music Direct and MoFi engaged in "deceptive and misleading" practices arising from their marketing and sale of vinyl records "produced under processes named by the Defendants as either 'Original Master Recording' (OMR) or 'UltraDisc One-Step (UD1S).'" *Id*. at ¶ 3; *Id.* at Ex. 2, ¶¶ 2-3. The *Tuttle* plaintiffs assert that Defendants marketed these records as being "entirely reproduced in an analog format," without disclosing that the mastering process for the records included a digital step. *Id*. at Ex. 2, ¶ 22. The *Tuttle* plaintiffs further assert that these alleged misrepresentations were made directly on the records' product packaging, as well as by alleged company representatives. *Id.* at Ex. 2, ¶¶ 22-23.

Based on these allegations, among others, the *Tuttle* plaintiffs assert claims on behalf of a Washington state class for violation of the Washington Consumer Protection Act ("WCPA"), RCW 19.86 *et seq. Id.* at Ex. 2, ¶¶ 46-54 (Count I). The *Tuttle* plaintiffs also bring claims for common law breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/1 *et seq.*, on behalf of a nationwide class. *Id*. at Ex. 2, ¶¶ 55-60 (Count II); ¶¶ 61-64 (Count III); and ¶¶ 65-69 (Count IV). The *Tuttle* nationwide class, which

4

subsumes Plaintiff's putative class, is defined as: "[a]ll persons and entities who, during the Class Period in the United States and its territories and possessions, [*sic*] Original Master Recording (OMR) and UltraDisc One-Step (UD1S)." *Id.* at Ex. 2, ¶ 36.

### D. The Nationwide Settlement Reached in *Tuttle* Is Pending Judicial Approval.

Following protracted arm's length negotiations, a settlement was reached in *Tuttle*. Declaration of Joseph J. Madonia ("Madonia Decl."), ¶ 2. After the parties in *Tuttle*—Music Direct, MoFi, and plaintiffs Stephen J. Tuttle and Dustin Collman—finalized a long-form written settlement agreement and on January 15, 2023, the *Tuttle* plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Program with the United States District Court for the Western District of Washington (the "Motion for Preliminary Approval"). *Id.* at Ex. 1. Shortly thereafter, on January 19, 2023, the parties in *Tuttle* filed a joint stipulation for an order to stay the case pending consideration of the Motion For Preliminary Approval. *Id.* at ¶ 3; *id.* at Ex. 2.

On January 20, 2023, the *Tuttle* Court denied the Motion For Preliminary Approval, primarily on the grounds that the accompanying filings, including the initial proposed settlement agreement and proposed order, contained various technical errors and ambiguities. *Id.* at ¶ 4; *id.* at Ex. 3 ("Order on Motion For Preliminary Approval" or "Order"). The Order requests the parties to, among other things, clarify certain provisions in the proposed settlement agreement, including the definition for the term "Settlement Claim Certification Form" and "[t]he process for a Class Member to return an Applicable Record for a refund." *Id.* at Ex. 3, ¶¶ 1, 4. Other corrections requested by the *Tuttle* Court include correcting the case number on the proposed order. *Id.* at Ex. 3, ¶¶ 5, 6. The *Tuttle* Court, however, invited the parties to resubmit an amended motion for preliminary approval correcting these issues. *Id.* at Ex. 3, ¶ 6. The Court further

5

granted the joint stipulation and stayed the case pending the Court's consideration of the renewed motion for preliminary approval. *Id.* at Ex. 3, 4:6-10.

On, February 2, 2023, the *Tuttle* plaintiffs filed an amended unopposed motion for preliminary approval (the "Amended Motion For Preliminary Approval") and submitted a copy of the amended settlement agreement (the "Amended Settlement Agreement"). *See* Madonia Decl., ¶¶ 5-6; id. at Ex. 4; id. at ¶ 6; id. at Ex. 5 at Internal Ex. 1. The Amended Settlement Agreement corrects each of the ambiguities and errors identified in the Order on Motion For Preliminary Approval. *See generally id.* at Ex. 4, 6:15-12:9.

Moreover, the proposed settlement class in *Tuttle*, is defined as:

> All original retail consumers in the United States who, from March 19, 2007, to July 27, 2022, purchased, either directly from a Defendant or directly from a Defendant or other retail merchants, new and unused Mobile Fidelity Sound Lab, Inc. ("MoFi") vinyl recordings which were marketed by Defendants using the series labeling descriptors "Original Master Recording" and/or "Ultradisc One-Step," that were sourced from original analog master tapes and which utilized a direct stream digital transfer step in the mastering chain, and provided that said purchasers still own said recordings (the "Applicable Records"). Excluded from the Class are persons who obtained subject Applicable Records from other sources.

*Id.* at Ex. 4, 6:20-7:3. This proposed settlement class subsumes Plaintiff's proposed nationwide class. *See* Bitterman Compl., Dkt. 1, ¶ 81. On February 6, 2023, the *Tuttle* Court entered an order instructing the *Tuttle* parties that it accepted the filing of the Amended Motion For Preliminary Approval. Madonia Decl., ¶ 8; *id.* at Ex. 7.

## ARGUMENT

### I. LEGAL STANDARD

#### a. First-To-File Rule

Under the first-to-file rule, a district court may stay a later-filed case "whenever it is duplicative of a parallel action already pending in another federal court." *Aliano v. Quaker Oats*

6

*Company*, Nos. 16-cv-3087, 4293, 6215, 7395, 2017 WL 56638, at *2 (N.D. Ill. Jan. 4, 2017) (internal quotations omitted). Actions are sufficiently duplicative "if the parties, claims, and available relief substantially overlap, even if they are not identical." *Nicholson v. Nationstar Mortg. LLC of Delaware*, Nos. 17-cv-1373, 8737, 18-cv-3075, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018) (internal quotations omitted). "When faced with duplicative actions, the forum where the action was first filed is generally favored." *Wagner v. Speedway LLC*, No. 20-cv-3014, 2021 WL 1192691, at *1 (N.D. Ill. Mar. 30, 2021) (citing *Nationwide Affordable Housing Fund 4, LLC v. Urb. 8 Danville Corp.*, No. 19-cv-07259, 2020 WL 2836795, at *2 (N.D. Ill. June 1, 2020)). Notably, the Seventh Circuit encourages "district courts [to] stay a second lawsuit pending the outcome of an earlier-filed lawsuit addressing the same issues" for purposes of "wise judicial administration." *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 205 (7th Cir. 2011); *accord Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Thus, district courts routinely stay later-filed actions "where deference to the first-filed action is consistent with considerations of judicial and litigant economy, and the just and effective disposition of disputes." *Nicholson*, 2018 WL 3344408, at *4 (internal quotation omitted).

### b. Court's Inherent Power To Stay Litigation

A court may also consider whether a stay is appropriate under its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In deciding whether to grant a stay under its inherent power, courts evaluate: "(i) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Askin v. Quaker Oats Co.*, No. 11-cv-0111, 2012 WL

7

517491, at *6 (N.D. Ill. Feb 15, 2012) (quoting *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 766, 799 (N.D. Ill. 2011)).

## II. A STAY IS WARRANTED UNDER THE FIRST-TO-FILE RULE.

Because this case is sufficiently duplicative of *Tuttle*—the first-filed action—this Court should stay this case under the first-to-file rule. Parallel actions are "duplicative" when there are few significant differences between the claims, parties, and relief sought. *See Serlin*, 3 F.3d at 223; *Nicholson*, 2018 WL 3344408, at *5. Indeed, "so long as the underlying facts are the same," variations in the particular legal claim or class scope are "not enough to render them substantially dissimilar for purposes of the first-to-file rule analysis." *Askin,* 2012 WL 517491, at *6. Courts apply the first-to-file rule by examining: (1) the chronology of actions; (2) the similarity of the parties; and (3) the similarity of the issues. *See, e.g.*, *Nicholson*, 2018 WL 3344408, at *5. Here, each of these factors weigh in favor of a stay because *Tuttle* predates this case and the parties and issues in both cases are substantially similar.

### a. *Tuttle* Predates This Case.

The first-to-file analysis begins by determining the chronology of actions. *Id.* Here, *Tuttle* was filed over two weeks prior to this case. *See* Skoczylas Decl., ¶¶ 2, 4 Thus, this threshold inquiry weighs in favor of a stay.

### b. The Parties and Putative Classes in *Tuttle* and This Case Are Substantially Similar.

The parties here are also substantially similar to parties in *Tuttle*. In the class action context, "the focus of the substantially similar inquiry is on the putative class members rather than the named plaintiffs themselves." *Nicholson*, 2018 WL 3344408, at *5 (citing *Askin*, 2012 WL 517491, at *4 (collecting cases)). Indeed, the relevant inquiry is "whether the class members would be the same in the two actions." *Humphrey v. United Healthcare Servs., Inc.*, No. 14-cv-

8

1157, 2014 WL 3511498, at *4 (N.D. Ill. July 16, 2014). Substantial similarity exists where the defendants are identical in both actions and both named plaintiffs seek to represent overlapping nationwide classes. *See, e.g.*, *Askin*, 2012 WL 517491, at *4 (finding that the parties were substantially similar in parallel class actions where both plaintiffs sought to "certify a class of persons who purchased [the defendant's] products in the United States for their own use"). Additionally, where settlement of the first-filed action "may dispose of virtually all class claims" in the later-filed action, the parallel actions are deemed sufficiently duplicative. *Moore v. Morgan Stanley & Co., Inc.*, No. 07 C 5606, 2007 WL 4354987, *2 (N.D. Ill. Dec. 6, 2007).

Here, substantial similarity exists between the parties because Music Direct and MoFi are defendants in both cases and there is substantial overlap between the respective putative nationwide classes.

Plaintiff's putative nationwide class is defined as: "All persons who purchased the UD1S Products in the United States during the applicable statute of limitations." Bitterman Compl., Dkt. 1, ¶ 81. The nationwide class in *Tuttle*—which subsumes Plaintiff's putative nationwide class—is defined as: "All persons and entities who, during the Class Period in the United States and its territories and possessions, Original Master Recording (OMR) and UltraDisc One-Step (UD1S)." Tuttle FAC, Skoczylas Decl., Ex. 2, ¶ 36. The "Class Period" in *Tuttle* is further defined to be "from at least 2002 to the present." *Id.* at Ex. 2, ¶ 37.

Thus, any purchaser of "UD1S Products in the United States" would fall into both of these putative nationwide classes. Notably, although Plaintiff does not identify a definite class period, instead utilizing a vague temporal limitation based on "the applicable statute of limitations," here, Defendants did not sell, or offer for sale, UD1S products prior to March 19, 2007. Declaration of Jim Davis, ¶ 3. Accordingly, because the *Tuttle* class covers a period that

9

significantly pre-dates any potential claims regarding the UD1S products, the *Tuttle* putative nationwide class substantially, if not entirely, overlaps with Plaintiff's putative nationwide class. *See Nicholson*, 2018 WL 3344408, at *6 (explaining that it is "sufficient to consider the plaintiffs in each action substantially similar" where "class definitions themselves demonstrate that at least some of the same individuals would be included in both").

Moreover, the putative settlement class in the Amended Settlement Agreement also encompasses Plaintiff's putative nationwide class. The settlement class is broadly defined as:

> All original retail consumers in the United States who, from March 19, 2007, to July 27, 2022, purchased, either directly from a Defendant or directly from a Defendant or other retail merchants, new and unused Mobile Fidelity Sound Lab, Inc. ("MoFi") vinyl recordings which were marketed by Defendants using the series labeling descriptors "Original Master Recording" and/or "Ultradisc One-Step," that were sourced from original analog master tapes and which utilized a direct stream digital transfer step in the mastering chain, and provided that said purchasers still own said recordings (the "Applicable Records"). Excluded from the Class are persons who obtained subject Applicable Records from other sources.

Madonia Decl., ¶ 5; *id.* at Ex. 4, 6:20-7:3. Covering all persons who purchased the UD1S products in the United States from 2007 to July 27, 2022, this putative settlement class also embraces Plaintiff's putative nationwide class. Consequently, the putative nationwide class members in this case will have their claims resolved in the settlement if, and when, the Nationwide Settlement is approved in *Tuttle*. *See, e.g.*, *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, No. 07-cv-7184, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008) ("*In re RC2 Corp.*") (staying litigation because settlement in related action "will have substantial effect on some or all of Plaintiffs' claims"). The parties are therefore sufficiently similar under the first-to-file rule. Thus, this factor also weighs in favor of a stay.

    c.  **The Issues in *Tuttle* and This Case Are Substantially Similar.**

The issues in this action and *Tuttle* are substantially similar because the gravamen of the

10

allegations in both cases is identical. Substantial similarity between the issues in parallel actions exists when both cases are "based on the same core factual allegations." *Humphrey*, 2014 WL 351198, at *2; *Askin*, 2012 WL 517491, at *3-4 (noting that claims are "substantially the same" where based on the same underlying facts). Indeed, "as long as the underlying facts are the same . . . the fact that the two complaints allege violations of different state laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis." *Askin*, 2012 WL 517491, at *4. Claims "need not be identical to satisfy the 'same issues' requirement of the first-to-file doctrine." *Preci-Dip, SA v. Tri-Star Elect. Int'l, Inc.*, No. 08-cv-4192, 2008 WL 5142401, at *2 (N.D. Ill. Dec. 4, 2008) (citation omitted).

Here, the crux of both cases concern Defendants' allegedly "deceptive and misleading" practices in connection with their marketing and sale of UD1S" branded vinyl records. *Cf.* Bitterman Compl., Dkt. 1, ¶¶ 2-13, *with* Tuttle FAC, Skoczylas Decl., Ex. 2, ¶¶ 1-3; 21-30. Specifically, both the *Tuttle* plaintiffs and Plaintiff here allege that Defendants falsely represented that the UD1S vinyl records were produced using an "all-analog" mastering chain without any "digital" component involved in the records' mastering process. *See, e.g.*, Bitterman Compl., Dkt. 1, ¶¶ 21-23; Tuttle FAC, Skoczylas Decl., Ex. 2, ¶¶ 1-3, 22. Based on these core allegations, both actions purport to assert claims against Defendants for unjust enrichment and violations of similar state consumer laws. *Cf.* Bitterman Compl., Dkt. 1, ¶¶ 116-29 (New York's Deceptive Practices Act); ¶¶ 78-87 (California's Consumer Legal Remedies Act), *with* Tuttle FAC, Skoczylas Decl., Ex. 2, ¶¶ 46-54 (Washington Consumer Protection Act); ¶¶ 65-69 (Illinois Consumer Fraud Act). Moreover, these shared factual allegations give rise to substantially similar requests for relief in both cases, including class certification, damages, pre- and post-judgment, and attorney's fees. *See, e.g.*, Bitterman Compl., Dkt. 1, Prayer for Relief, ¶¶

11

(A)-(F); Tuttle FAC, Skoczylas Decl., Ex. 2, Prayer, ¶¶ (a)-(h). *See Nicholson*, 2018 WL 3344408, at *7-8 ("Because these claims and requested relief are all based on the same core factual allegations, they are sufficiently similar for purposes of the first-to-file rule.").

Because the core allegations, claims, and requested relief in this case and *Tuttle* substantially overlap, this Court should apply the first-filed rule to stay this case in favor of *Tuttle*.

### d. No Exception to the First-To-File Rule Applies.

Although certain exceptions exist allowing a court to decline to apply the first-to-file rule, none of them apply here. Exceptions to the first-to-file rule arise where a lawsuit was filed as an anticipatory action or where a party is engaged in forum shopping. *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (citations omitted).

The anticipatory action exception applies if the plaintiff in a first-filed case filed suit "under threat of an imminent suit" and asserts "the mirror-image of that suit in another district." *Id*. The forum shopping exception applies where a plaintiff files an action in a particular forum to avoid litigation and adverse rulings in another forum. *See Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1010 (N.D. Ill. June 12, 2009); *Cardoza v. T-Mobile USA Inc.*, No. 08-cv-5120, 2009 WL 723843, at *3 (N.D. Cal. Mar. 18, 2009).

Here, there is no evidence that either of these exceptions apply. There is no evidence that *Tuttle* was filed under the imminent threat that this case would be filed. Indeed, *Tuttle* was filed over two weeks before this case. *See* Skoczylas Decl., ¶¶ 2, 4. Therefore, the anticipatory exception is inapplicable. Moreover, there is no evidence that the *Tuttle* plaintiffs filed suit in the Western District of Washington to avoid any adverse ruling in this forum or to gain a tactical advantage. Thus, the forum shopping exception is also inapplicable.

Because Plaintiff cannot establish that any of these exceptions apply, this Court should apply the first-to-file rule and stay this case.

### III. A STAY IS WARRANTED UNDER THIS COURT'S INHERENT POWER.

Alternatively, this Court may stay this case under its inherent powers. District courts have the inherent power to control the disposition of the cases on their dockets, including the power to stay proceedings. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Courts in this Circuit routinely stay actions where the stay is unlikely to prejudice the plaintiff, would simplify the issues in question and streamline the case, and would minimize the burden on the parties and court by avoiding duplicative litigation. *See, e.g.*, *Lynn Scott, LLC v. Grubhub, Inc.*, No. 1:20-cv-06334, 2021 WL 1088304, at * 5 (N.D. Ill. Mar. 22, 2021) (granting stay under court's inherent power despite finding that the first-to-file rule was not applicable); *Pfizer Inc.*, 640 F. Supp. at 1010-11 (staying second-filed action where first-to-file rule applied and allowing the second-filed action to proceed would be an "inevitable waste of judicial and party resources"). Here, each of these factors weigh in favor of granting a stay of this case.

First, no party will be prejudiced if a stay is granted. This case remains in its infancy. No party to this action has served written discovery, and no trial date has been set. Skoczylas Decl., ¶ 5; *see, e.g.*, *Card Activation Technologies, Inc. v. 7-Eleven, Inc.*, No. l:10-cv-4984, 2011 WL 663960, at *2 (N.D. Ill. 2011) (finding that where "neither side [began] discovery" and "[a] trial date has not been set]," "there is no apparent prejudice or tactical disadvantage that the Plaintiff would be forced to endure if a stay were granted"). Moreover, Plaintiff will not be prejudiced because his claims will be preserved in this Court. Thus, even if Plaintiff contends that any of his claims would not be fully resolved by *Tuttle* (they would be), he will still be able to pursue any residual issues in this action. *See Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp.

13

3d 870, 877 (N.D. Ill. 2016) (observing that "the potential for delay 'does not, by itself, establish *undue* prejudice'") (emphasis in original); *Askin*, 2012 WL 517491, at *6 ("Although [Plaintiff] likely would prefer to move forward with the case with the goal of being the first to certify a nationwide class, as long as his individual claim is preserved in this court, there is no reason to think that allowing the California litigation to proceed will cause him undue harm."). Plaintiff also will not be prejudiced because, if he believes that the class benefit in the Nationwide Settlement is unfair or insufficient, he may object to it.

Second, a stay will simplify the issues because it "may eliminate entirely the need for any further proceedings whatsoever in this Court." *Pfizer Inc.*, 640 F. Supp. 2d at 1008. As discussed above, *see, supra*, § II.(c), there is substantial overlap between the parties, allegations, claims, and relief sought in this case and in *Tuttle*, and the proposed settlement class in *Tuttle* subsumes Plaintiff's putative class. Thus, if the Nationwide Settlement is approved, as anticipated, *Tuttle* may very well dispense of the issues in this case. *See, e.g.*, *Lynn Scott, LLC*, 2021 WL 1088304, at * 5 (finding that a stay would simplify the issues in parallel actions, even where the first-filed action "targets a narrower subset of conduct" because settlement was anticipated in the first-filed action) (citations omitted); *In re RC2 Corp.*, 2008 WL 548772, at *5 (staying litigation because settlement in related action "will have a substantial effect on some or all of Plaintiffs' claims").

Third, a stay will reduce the burden on this Court and the parties by avoiding duplicative and costly litigation. Allowing this case to proceed when a settlement potentially barring Plaintiff's class action is pending would cause the parties to expend significant time and resources on motion practice and discovery on a case that is unlikely to result in class certification. *See, e.g.*, *Moore*, 2007 WL 4354987, at *2 (finding that "[s]imultaneous litigation in [parallel] venues would expend significant judicial and litigant resources" and staying case to

14

"avoid expensive and duplicative litigation of virtually the same claims in two federal courts"). Allowing *Tuttle* to proceed will therefore save the parties and the Court significant time and effort expended on foreseeable duplicative briefing and discovery.

Because all three of these factors also weigh in favor of a stay, this Court should exercise its inherent authority to stay this case.

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that this motion be granted and that the Court enter an order staying this litigation until the *Tuttle* Court makes a final determination on the Amended Motion For Preliminary Approval.

Date: February 7, 2023

**JOSEPH J. MADONIA & ASSOCIATES**

By: /s/ *Joseph J. Madonia*
      Joseph J. Madonia

Joseph J. Madonia
JOSEPH J. MADONIA & ASSOCIATES
5757 North Sheridan, Suite 10A
Chicago, Illinois 60660
Telephone: (312) 953-9000
Facsimile: (773) 654-5066
Email: josephmadonia@gmail.com

**BARNES & THORNBURG LLP**

By:    /s/ *Joseph F. Madonia*
      Joseph F. Madonia

Joseph F. Madonia
Mark L. Durbin
Christine E. Skoczylas
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 214-5611
Email: joseph.madonia@btlaw.com
mark.durbin@btlaw.com
chrstine.skoczylas@btlaw.com

15

*Attorneys for Defendant Mobile Fidelity Sound Lab, Inc., and Audiophile Music Direct, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Joseph F. Madonia*